STATE OF CONNECTICUT *v*. ERIC ANTHONY
(8969)

DUPONT, C. J., O'CONNELL and LANDAU, Js.

Argued November 5, 1990—decision released February 22, 1991

*Eric Anthony,* pro se, the appellant (defendant).

*Rita M. Shair,* deputy assistant state's attorney, with whom were *John O'Reilly,* assistant state's attorney, and, on the brief, *John Bailey,* state's attorney, for the appellee (state).

DUPONT, C. J. The defendant was found guilty, after a court trial, of one count of creating a public disturbance in violation of General Statutes § 53a-181a and one count of simple trespass in violation of General Statutes § 53a-110a. Both statutory violations are infractions. The defendant was originally charged with criminal trespass in violation of General Statutes § 53a-107 and interfering with a police officer in violation of General Statutes § 53a-167a (a), both of which are misdemeanors.

The defendant raises five claims on appeal.[1] The defendant contends that the court, *Norko, J.,* improp-

---

[1] On the date of the oral argument of this case, a motion to consolidate it with two other cases, *State* v. *Jennifer Clarke,* A.C. 9151, and *State* v.

erly found probable cause for his warrantless arrest. He further asserts that the court, *Smith, J.,* (1) lacked personal and subject matter jurisdiction, (2) denied the defendant his right to discovery, (3) abused its discretion in refusing to consider a brief on the defenses of necessity and justification, and (4) abused its discretion throughout the course of the trial so that the defendant was deprived of his right to a fair trial.

The trial court could have found reasonably certain facts. On June 17, 1989, the defendant was involved in a demonstration that occurred in a private shopping center parking lot in West Hartford. The demonstration's purpose was to prevent the performance of abortions. During the course of the protest, Officer Steven Looby saw the defendant break through a police barricade and rush toward a bus, which was about to leave the parking lot to transport demonstrators who had been arrested to police headquarters. The defendant then crawled underneath the bus to prevent it from moving and had to be pulled out from under it by Looby. Two days later, after the defendant's arrest, he was arraigned along with approximately 260 other demonstrators who had also been arrested. The court found probable cause for criminal trespass and interfering with a police officer, but the record is unclear as to whether the defendant pleaded to these criminal charges. Approximately one week later, the defendant posted the bond set by the court and was released from custody.

About a month before the trial was to begin, the state filed a substitute information reducing the charges against the defendant to infractions. The defendant claimed that the substituted charges of simple trespass

*John Grant,* A.C. 9571, was filed. The motion sought, in the alternative, consolidation of the *Clarke* and *Grant* cases. On November 16, 1990, the motion to consolidate was denied.

and creating a public disturbance were ridiculous and refused to enter a plea. The court entered not guilty pleas for the defendant. The case proceeded to trial, and the court found the defendant guilty of both infractions.

I

The defendant first argues that his convictions should be reversed because the court improperly found probable cause. The defendant claims that he was deprived of his right to a separate and independent judicial determination of probable cause pursuant to the constitution of Connecticut, article first, § 9, and Practice Book § 650[2] because he was arraigned with approximately 260 other people. He further claims that he was prejudiced by the court's finding of probable cause because he could not credit the time that he spent in jail before he made the bail against his punishment, the fines that were imposed for the infraction violations. The state contends that the court properly found probable cause for the defendant's arrest and that the defendant's argument concerning his inability to credit time served against the fine imposed is moot because no court can, after the serving of jail time, provide any practical relief.

The defendant is correct in asserting that he was entitled to an independent, judicial determination of

---

[2] The constitution of Connecticut, article first, § 9, provides: "No person shall be arrested, detained or punished, except in cases clearly warranted by law."

Practice Book § 650 provides: "If a defendant has been arrested without a warrant and has not been released from custody by the time of the arraignment or is not released at the arraignment pursuant to Sec. 658, the judicial authority shall, unless waived by the defendant, make an independent determination as to whether there is probable cause for believing that the offense charged has been committed by the defendant. Such determination shall be made in a nonadversary proceeding, which may be ex parte, at which affidavits or testimony under oath shall be received. If no such probable cause is found, the judicial authority shall discharge the defendant."

probable cause in a nonadversary proceeding pursuant to Practice Book § 650 because he was arrested without a warrant and was not released from custody at the time of the arraignment. Under the precepts of *State* v. *Fleming,* 198 Conn. 255, 263, 502 A.2d 886, cert. denied, 475 U.S. 1143, 106 S. Ct. 1797, 90 L. Ed. 2d 342 (1986), however, even if the defendant did not receive the rights enumerated in Practice Book § 650 and article first, § 9, of the Connecticut constitution, the judgment of the trial court must stand.

"Where the fairness of a subsequent prosecution has not been impaired by an illegal arrest, neither the federal nor the Connecticut constitution requires dismissal of the charges or a voiding of the resulting conviction." *State* v. *Fleming,* supra. The fairness of a subsequent prosecution is impaired where evidence, obtained as a direct consequence of an illegal arrest, is admitted against the defendant at trial. *State* v. *Ostroski,* 201 Conn. 534, 555, 518 A.2d 915 (1986); *State* v. *Ryerson,* 201 Conn. 333, 338, 514 A.2d 337 (1986).

Here, the defendant does not claim that his trial was tainted by evidence obtained as a direct consequence of his allegedly illegal arrest and detention. Furthermore, no illegally obtained evidence was introduced at trial. The record reveals that the defendant received a fair trial.

In an attempt to circumvent *Fleming* and its progeny, the defendant argues that *State* v. *Mitchell,* 200 Conn. 323, 512 A.2d 140 (1986), controls. *Mitchell,* however, is distinguishable. Unlike the defendant here, the defendant in *Mitchell* was entitled to an adversarial probable cause hearing as mandated by the Connecticut constitution.[3] The *Mitchell* court held that an adver-

---

[3] Amendment XVII to the Connecticut constitution amended article first, § 8, to provide in relevant part: "No person shall be held to answer for any crime, *punishable by death or life imprisonment,* unless upon probable cause

sarial probable cause hearing is a critical stage of the prosecution of those charged with crimes punishable by death or life imprisonment, and that under our state constitution, such a hearing is a jurisdictional prerequisite to continuing a prosecution. *State* v. *Mitchell,* supra, 332. As a result, the court concluded, "an invalid finding of probable cause at such a hearing undermines the court's power to hear the case at trial." Id. The holding in *Mitchell,* therefore, is that there can be appellate review of a probable cause finding in crimes punishable by death or life imprisonment because of the unique nature of the express constitutional guarantee in such cases.

In the present case, the defendant was not entitled to an adversarial probable cause hearing because he was not charged with a crime punishable by death or life imprisonment. Even if the trial court improperly found that probable cause existed, the subsequent judgments of conviction of the defendant would not be void. *State* v. *Fleming,* supra.

The defendant next claims that he was prejudiced because he spent time in jail that he was unable to credit against the fines eventually imposed for punishment. We agree with the state that this claim is moot because no practical relief can be afforded to the defendant. *Connecticut Resources Recovery Authority* v. *Freedom of Information Commission,* 19 Conn. 489, 493–94, 562 A.2d 1145 (1989).

## II

The defendant next contends that the court lacked subject matter jurisdiction over the infractions because the infraction prosecution here was initiated by an

---

shown at a hearing in accordance with procedures prescribed by law, except in the armed forces, or in the militia when in actual service in time of war or public danger." (Emphasis added.)

assistant state's attorney rather than by the local or the state police. Thus, the conviction, he argues, is null and void ab initio as an ultra vires act of the court. He relies on General Statutes § 51-164o for this proposition. He claims, as well, that the court also lacked jurisdiction in personam because he never pleaded to the infractions. We disagree with the defendant's jurisdictional challenges.

The authority of a court to decide the cause of action presented to it involves its jurisdiction. *LaReau* v. *Reincke,* 158 Conn. 486, 492, 264 A.2d 576 (1969). There are three requirements that must be satisfied for a court to have jurisdiction. First, the case at issue must belong to the general class of cases over which the court has cognizance. Second, the parties must have been properly served and brought before the court. Third, the issue to be decided must be alleged in the complaint. *Telesco* v. *Telesco,* 187 Conn. 715, 719–20, 447 A.2d 752 (1982). Only the first two requirements are at issue here. We find that both have been satisfied.

The defendant concedes that General Statutes § 51-164s confers original jurisdiction upon the Superior Court to hear all causes of action except those causes of action over which the Probate Court has jurisdiction.[4] The defendant, however, argues that the court was stripped of its original jurisdiction to hear the infractions because the allegedly exclusive procedure for the initiation of infraction prosecutions established in General Statutes § 51-164o was not followed.[5] The defendant's reliance on this statute is misplaced.

[4] General Statutes § 51-164s provides in part that "[t]he superior court shall be the sole court of original jurisdiction for all causes of action, except such actions over which the courts of probate have original jurisdiction, as provided by statute."

[5] General Statutes § 51-164o provides in relevant part: "[A] nonresident of the state, if summoned for allegedly having committed an infraction, shall be required to post a cash bond or a guaranteed bail bond certificate,

General Statutes § 51-164o does not affect or address the subject matter jurisdiction of the Superior Court. It does not, expressly or impliedly, provide that prosecutions for infractions may not be initiated by a prosecuting authority. It allows the police to initiate such prosecutions but does not prohibit such prosecutions by a state prosecutor.

The state is not required by the constitution to use a particular type of charging document when prosecuting a crime. *State* v. *Weisser,* 9 Conn. App. 255, 258 n.1, 518 A.2d 655 (1986), cert. denied, 202 Conn. 803, 519 A.2d 1207 (1987) (*Spallone, J.,* concurring). Misdemeanors, violations and *infractions* may be prosecuted by either information or complaint. Practice Book § 616; *State* v. *Weisser,* supra, 258–59 n.1.

In *Weisser,* this court stated that the purpose of establishing the infraction of creating a public disturbance that replicated in part the existing offense of disorderly conduct, a class C misdemeanor, was to give the police, in addition to the prosecuting authorities, the discretion to charge a person with an infraction where deemed appropriate. *State* v. *Weisser,* supra, 257, citing 26 S. Proc., Pt. 8, 1983 Sess., p. 2535.

Similarly, the infraction of simple trespass, which was also created by Public Acts 1983, No. 83-276, the same act that created the infraction of creating a public disturbance, duplicates in part the language used in Gen-

---

as provided in section 14-140a, with the local or state police issuing the summons and shall not be permitted to plead or pay by mail as provided in section 51-164n." The state and the defendant agree that there is no other section involving the issuance of a summons for infractions to residents. The defendant's argument assumes that the statute requires that all infractions must be instituted by summons of the local or state police whether the summons relates to residents or nonresidents.

The statute has since been amended by Public Acts 1990, No. 90-213. The amendment made no change in the language herein quoted.

eral Statutes § 53a-109, criminal trespass in the third degree, a class C misdemeanor. It follows that the purpose of replicating the language of that offense in the infraction of simple trespass was to enable both the police and prosecuting authorities to bring charges of simple trespass against a person. See *State* v. *Weisser,* supra; see also 26 S. Proc., Pt. 8, 1983 Sess., p. 2535.

In the present case, the defendant was charged with the infractions of creating a public disturbance and simple trespass brought in a substitute information by an assistant state's attorney. It was within the prosecuting authority's discretion to bring these charges in an information. See *State* v. *Weisser,* supra. It did not matter, therefore, whether the charges were brought by a prosecuting authority or by the state or local police. The defendant cannot complain that the prosecutor proceeded with the infraction violations that imposed lesser punishments, rather than choosing to proceed with the more serious criminal charges. See *State* v. *Steinman,* 20 Conn. App. 599, 608, 569 A.2d 557, cert. denied, 214 Conn. 806, 573 A.2d 319 (1990). We conclude, therefore, that the charges were properly brought and that the court had subject matter jurisdiction.

The defendant also argues that the court lacked personal jurisdiction because he did not plead to the infraction violations that were brought in the substitute information and was not originally arrested for the infraction violations. The defendant does not claim that he was prevented from pleading guilty or obtaining a court trial. Compare *State* v. *Piskorski,* 177 Conn. 677, 748, 419 A.2d 866, cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979).

Personal jurisdiction may be acquired either by consent of the accused or by waiver unless an objection is properly preserved. *State* v. *Baez,* 194 Conn. 612,

616, 484 A.2d 236 (1984); *State* v. *Brown,* 8 Conn. App. 248, 253, 512 A.2d 965 (1986). An accused waives his objection to personal jurisdiction by pleading not guilty and by going to trial. *State* v. *Baez,* supra; *State* v. *Brown,* supra.

In this case, the defendant waived any objection to personal jurisdiction. Although the defendant argues that he did not plead to the infraction violations, the record reveals otherwise.[6] By pleading not guilty and by proceeding to trial, the defendant waived the objection to personal jurisdiction. Furthermore, one cannot avoid prosecution for a crime by the simple tactic of refusing to plead to the crime.

We find, therefore, that the court had both subject matter and personal jurisdiction and, thus, that the defendant's challenges to jurisdiction must fail.

### III

The defendant next claims that the court effectively and repeatedly denied him his right to discovery thereby depriving him of a fair trial.

Additional facts are germane to the disposition of this issue. The defendant filed a motion for discovery requesting the disclosure of any exculpatory material

---

[6] The following colloquy discloses that although the defendant claimed that he was not entering a plea, what he said was tantamount to not guilty pleas:

"Mr. Anthony: I want to fight this, Your Honor.

"The Court: It's not called fighting it. It's called, you want your trial.

"Mr. Anthony: All right, I want to make a special challenge to the charge here.

"The Court: Go ahead.

"Mr. Anthony: The special challenge is the charges are ridiculous.

"The Court: Okay, that's noted . . . ."

The defendant then said that he was not entering a plea; the court responded that his pleas had already been entered in light of the above dialogue. The assistant state's attorney asked the court to note pro forma not guilty pleas, and the court did so.

and requesting, among other things, "all photographs of the defendant which the state intends to introduce as evidence at trial . . . any and all . . . video tape recordings obtained by either law enforcement agents or cooperating individuals which involve this defendant . . . and which relate to any of the allegations set forth in the information . . . ." The defendant also requested a statement of the essential facts. The court granted both the discovery motion and the request for a statement of the essential facts.

On the eve of the trial, the defendant complained that the state had not complied with the court's discovery order and moved to dismiss the case pursuant to General Statutes § 54-56[7] claiming that the state's failure to comply with the discovery order had prevented him from preparing his defense.[8] On appeal, the defendant contends that if the state had complied with his discovery motion, he would have been able to discover other witnesses whose testimony might have differed from the testimony of Looby, the state's chief witness, and thus the defendant might have been able to exculpate himself or to impeach the credibility of Looby. The defendant admits that he received a statement of the essential facts.[9] Practice Book § 625.

[7] General Statutes § 54-56 provides in part that a court may, upon a motion of the defendant, "dismiss any information and order such defendant discharged if, in the opinion of the court, there is not sufficient evidence or cause to justify the bringing or continuing of such information or the placing of the person accused therein on trial."

[8] In his brief, the defendant also mentions that a bill of particulars, though requested, was never filed. He, however, neglected to brief the issue of how this failure to file a bill of particulars prejudiced him. Since this claim was not adequately briefed, we decline to address it. See Practice Book § 4065; *Liscio* v. *Liscio*, 204 Conn. 502, 507, 528 A.2d 1143 (1987).

[9] The state submitted the following statement of essential facts on September 15, 1989: "On or about June 17, 1989, at or near the Summit Women's Center, 345 North Main Street, West Hartford, Conn., the defendant, Eric Anthony, knowing that he was not licensed or privileged to do so, entered and remained on premises after an order to leave or not to enter

The defendant should have moved for sanctions pursuant to Practice Book § 747, rather than moving for a dismissal pursuant to General Statutes § 54-56. Section 747 sets forth the sanctions available when a prosecuting authority fails to comply with a discovery order.[10] The court, nonetheless, treated the defendant's motion as if it had been made pursuant to Practice Book § 747. Finding that the state had complied with the court's discovery order, the court proceeded with the trial. Later in the trial, the court expressly informed the defendant that it had denied his motion to dismiss.

Although, pursuant to Practice Book § 747, the trial court has broad discretion in applying sanctions for failure to comply with discovery orders; *State* v. *Festo,* 181 Conn. 254, 264, 435 A.2d 38 (1980); *State* v. *Fraenza,* 9 Conn. App. 228, 237, 518 A.2d 649 (1986), cert. denied, 202 Conn. 803, 519 A.2d 1206 (1987); in this case the court, having determined that the state had complied with the discovery ordered, refused to apply any sanctions.

was personally communicated to him by the owner of the premises or other authorized person, and obstructed, resisted, hindered or endangered a police officer in the performance of his duties." Although the state filed this statement with respect to the criminal charges with which the defendant was initially charged, the facts cited therein also form the basis for the infraction violations of which the defendant was ultimately found guilty. Thus, the defendant was not prejudiced because the substituted counts arose out of the same factual matrix as the original counts. See *State* v. *Huff,* 10 Conn. App. 330, 346, 523 A.2d 906, cert. denied, 203 Conn. 809, 525 A.2d 523 (1987).

[10] Practice Book § 747 provides: "If the prosecuting authority fails to comply with Sec. 740, the judicial authority may, on motion of the defendant or on his own motion, grant appropriate relief, which may include one or more of the following:

"(1) Requiring the prosecuting authority to comply;

"(2) Granting the defendant additional time or a continuance;

"(3) Relieving the defendant from making a disclosure required by Sec. 756, prohibiting the prosecuting authority from introducing specified evidence, or dismissing the charges; or

"(4) Entering such other order as he deems proper."

The defendant argues that the state did not comply with the discovery order and, further, that the failure to comply is a per se violation of the order requiring dismissal of the charges.

"The purpose of criminal discovery is to prevent surprise and to afford the parties a reasonable opportunity to prepare for trial." *State* v. *Festo,* supra, 265. After inquiring of both the defendant and the state, the court found that (1) the defendant had received a statement of the essential facts, (2) the defendant was not surprised that the state was ready to proceed, (3) the state intended to prove its case based entirely on in-court testimony, that is, none of the items that were requested by the defendant, namely the photograph of him when he was arrested at the demonstration and the videotape of the event, were to be used in the prosecution's case-in-chief, and (4) the state did not have any exculpatory material in its possession. In light of these findings, the court denied the defendant's motion to dismiss.

The state relied solely on oral testimony to prove its case. Looby, the state's chief witness, testified that a videotape of the area existed but that he was not certain that the particular area in which it was alleged that the defendant had crawled under the bus was shown in that video. Looby also testified that there were photographs of some of the other protesters, as well as a photograph of the defendant. The state did not use any photographs or the videotape as evidence. The court concluded that it had not been shown by the defendant that either the photographs or the videotape was exculpatory.

The thrust of the defendant's defense was that his behavior was warranted because of his belief that human life was endangered. The photographs and videotape are relevant, if at all, to the behavior of the

defendant and are not relevant to his defense. We conclude that the videotape and photographs were not exculpatory within a *Brady* or statutory context. General Statutes § 54-86c; *Brady* v. *Maryland,* 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963); see *State* v. *Crumble,* 24 Conn. App. 57, 585 A.2d 1245 (1991). The dismissal of criminal charges as a sanction against the state for failing to comply with a discovery order is an extreme remedy.[11] See *State* v. *Cosgrove,* 186 Conn. 476, 486, 442 A.2d 1320 (1982); *State* v. *Brown,* 8 Conn. App. 248, 251, 512 A.2d 965 (1986). We conclude in this case that the court did not abuse its discretion in refusing to dismiss the charges against the defendant as a sanction for the failure to comply with the discovery order.

## IV

The defendant next argues that the court abused its discretion in refusing to permit the defendant to assert the defenses of necessity and justification, thereby depriving him of his fundamental due process right to present a defense. We do not agree.

"Where an offer of proof is made with respect to a defense and it is clear from the offer of proof that the defense is insufficient as a matter of law, the trial court may properly refuse to permit evidence of the defense to be submitted to the jury." *State* v. *Drummy,* 18 Conn. App. 303, 309–10, 557 A.2d 574 (1989); see also *State* v. *Woods,* 23 Conn. App. 615, 583 A.2d 639 (1990). The defendant briefly argued the applicability of the defense of necessity but was not allowed to submit a

---

[11] We are not aware of any reported decision in this jurisdiction in which a trial court has dismissed charges pending against a defendant on the basis of the state's failure to comply with a discovery order. *State* v. *Brown,* 8 Conn. App. 248, 251 n.3, 512 A.2d 965 (1986), citing A. Spinella, Connecticut Criminal Procedure c. 7, pp. 509–10.

brief on it.[12] The court did not abuse its discretion in failing to consider the defendant's brief because the defendant's argument, even if believed and assumed to be supported by evidence, was insufficient as a matter of law to establish a defense of necessity. See *State* v. *Drummy,* supra, 310.

This court has recently adopted a definition of the common law defense of necessity that requires a showing by the defendant: " '(a) that there [was] no . . . legal alternative available, (b) that the harm to be prevented [was] imminent, and (c) that a direct causal relationship [may] be reasonably anticipated to exist between defendant's action and the avoidance of harm.' *United States* v. *Seward,* 687 F.2d 1270, 1275 (10th Cir. 1982), cert. denied, 459 U.S. 1147, 103 S. Ct. 789, 74 L. Ed. 2d 995 (1983); *State* v. *Marley,* 54 Haw. 450, 472, 509 P.2d 1095 (1973)." *State* v. *Drummy,* supra, 309.

In this case, the trial court determined that the harm to be prevented as alleged by the defendant is not recognized as an injury under law. Public Acts 1990, No. 90-113;[13] *Roe* v. *Wade,* 410 U.S. 113, 93 S. Ct. 705, 35 L. Ed. 2d 147 (1973). Since this defense was insufficient as a matter of law, the court properly refused to allow the defendant to raise it.

The defendant claims that the trial court refused to allow him to make the statutory defense of justifica-

---

[12] The defendant's brief that had been prepared for submission to the trial court is part of the Appellate Court record.

[13] General Statutes §§ 53-29 through 53-31b had made abortion a crime. Even though these statutes were not repealed until 1990; Public Acts 1990, No. 90-113; they were unenforceable since 1973 in light of *Roe* v. *Wade,* 410 U.S. 113, 93 S. Ct. 705, 35 L. Ed. 2d 147 (1973). Although Public Act No. 90-113 was not in effect at the time of the demonstration, it evinces the legislature's intent to adopt a policy in favor of legalized abortion. Such a policy had already been in effect in the state even before the legislature acted. See, e.g., *State* v. *Orsini,* 187 Conn. 264, 445 A.2d 887, cert. denied, 459 U.S. 861, 103 S. Ct. 136, 74 L. Ed. 2d 116 (1982).

tion. The court never ruled one way or the other on the applicability of this defense. The defendant's brief on appeal on this issue contains no more than the bare assertion that he was entitled to raise this defense and was entitled to submit a brief to the trial court. The defendant has abandoned the claim because he has failed to brief it. See Practice Book § 4065; *Liscio* v. *Liscio,* 204 Conn. 502, 507, 528 A.2d 1143 (1987). Furthermore, even if we were to rely on the trial court brief, which is almost equally bare of argument, justification is not a defense to an infraction. General Statutes §§ 53a-16 through 53a-24.

## V

The defendant advances a claim of judicial misconduct. He contends that the sarcastic comments of the court resulted in "a repeated pattern of bullying, shouting [at] and insulting" the defendant, thereby depriving him of his right to a fair trial. The state argues that this claim is not reviewable because it was not preserved at trial or, in the alternative, that the defendant did receive a fair trial.

We first note that the defendant did not preserve this claim at trial because he did not object to the court's remarks, move for a mistrial, or move to disqualify the judge. See *State* v. *Cazimovski,* 20 Conn. App. 190, 565 A.2d 254 (1989). "Claims of improper judicial commentary . . . have been held to be appropriate subjects for appellate review under *Evans"*; *State* v. *Jenkins,* 8 Conn. App. 35, 41, 510 A.2d 1370 (1986); or under the doctrine of plain error. *Cameron* v. *Cameron,* 187 Conn. 163, 444 A.2d 915 (1982); *Tatro* v. *Tatro,* 24 Conn. App. 180, 189, 587 A.2d 154 (1991).

We must determine whether any of the court's statements about which the defendant complains deviated from the impartiality required of the court to such an

extent that they clearly deprived the defendant of his right to a fair trial. *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989); see *State* v. *Jenkins,* supra.

We first note that comments of a trial court that are characterized as " 'bullying and sarcastic' . . . are difficult to substantiate since a reviewing court is limited to an examination of a printed record and lacks the benefit of observing the exchanges between the participants involved in the conduct of the trial." *State* v. *Jenkins,* supra, 42.

"The judge took no position of advocacy regarding the outcome of the case, and made no improper comments on the significance of the evidence presented. . . . Further, neither the judge's comments nor his questions impugned the defendant's credibility." *State* v. *Siller,* 12 Conn. App. 395, 400, 530 A.2d 1106, cert. denied, 205 Conn. 811, 532 A.2d 586 (1987). In sum, the court's allegedly improper remarks did not affect the defendant's ability to defend himself. Id. On the basis of the cold transcript alone, we conclude that there was no impropriety in the court's comments and, thus, that no constitutional violation clearly existed. The defendant cannot prevail on this claim of constitutional error that he did not preserve at trial because he has not met *all* of the conditions of *State* v. *Golding,* supra.

The judgment is affirmed.

In this opinion the other judges concurred.